IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff,<br><br>v.<br><br>VINCENT L. WESTLEY,<br>Defendant. | Case No. 18–CR–40047–JPG |

## **MEMORANDUM OPINION AND ORDER**

Before the Court is Defendant Vincent L. Westley's Motion for Compassionate Release. (ECF No. 37). Westley supplemented his Motion through the Federal Public Defender. (ECF No. 44). The Government responded, (ECF No. 47); and Westley replied, (ECF No. 49). For the reasons below, the Court **DENIES** Westley's Motion for Compassionate Release.

### I.     PROCEDURAL & FACTUAL HISTORY

#### A.  The Conviction

In 2018, a federal grand jury in this District indicted Westley for receiving and possessing child pornography. (Indictment 1–2, ECF No. 1). He pleaded guilty five months later, (Minute Entry 1, ECF No. 20); and the Court sentenced him to a 60-month term of imprisonment, (Judgment 2, ECF No. 34). He is currently incarcerated at Federal Correctional Institution ("FCI") Forrest City Low in Arkansas. (Def.'s Mot. for Compassionate Release at 2).

#### B.  The Presentence Investigation Report

Before sentencing, the Court considered the Presentence Investigation Report ("PSR") prepared by the U.S. Probation Office, which provided information about the nature and circumstances of the offense and Westley's background. (*See* First Revised PSR 1, ECF No. 26).

According to the PSR, undercover officers with the Federal Bureau of Investigations discovered that Westley downloaded several "[f]iles appearing to depict child pornography. . . using the eMule peer-to-peer program." (*Id.* at 3). They then approached him at his home, where he "consented to a search of his laptop computer which revealed 9 video files and 88 images containing child pornography." (*Id.*). The contraband featured children possibly as young as three years old engaging in various sexual acts, sometimes while tied down. (*Id.* at 3–4). Along with admitting to "using the eMule peer-to-peer program to actively search for child pornography," Westley "also searched for child pornography on www.motherless.com and www.shesfreaky.com" using "the search terms 'preteen dancing' and 'preteen modeling.' " (*Id.* at 4).

### C. Westley's Motion for Compassionate Release

In June 2020, Westley moved for a sentence modification under 18 U.S.C. § 3582(c)(1)(A), also called *compassionate release*. (Def.'s Mot. for Compassionate Release at 1). He contends that serious medical conditions—hypertension, high cholesterol, low iron, an enlarged heart, anxiety, and depression—make him especially vulnerable to the COVID-19 virus. (*Id.* at 2).

The COVID-19 virus, of course, is now a global pandemic. At FCI Forrest City Low, 48 inmates currently have COVID-19; 635 have recovered (including Westley); and none have died. *Coronavirus*, Bureau of Prisons (last visited Nov. 6, 2020).[1] In brief, Westley argues that his increased risk of experiencing serious complications if he contracts COVID-19 (again) is an *extraordinary and compelling reason* warranting his release. (Def.'s Mot. for Compassionate Release at 3).

---

[1] *Available at* https://www.bop.gov/coronavirus.

## II.     LAW & ANALYSIS

The Court recognizes that compassionate release is appropriate for some defendants considering the COVID-19 pandemic. Even so, each defendant moving for compassionate release bears the burden of showing *not only* that they face an increased risk of exposure to the virus, *but also* that their continued incarceration is unnecessary to advance the statutory purposes of punishment (*i.e.*, justice, deterrence, incapacitation, and rehabilitation). Westley failed to meet that burden.

### A.  Legal Standard

District courts generally "may not modify a term of imprisonment once it has been imposed . . . ." 18 U.S.C. § 3582(c). That said, an exception exists for when "extraordinary and compelling reasons warrant such a reduction . . . ." *Id.* § 3582(c)(1)(A)(i). Even then, however, the sentencing judge must still "consider[] the factors set forth in section 3553(a) to the extent that they are applicable . . . ." *Id.* § 3582(c)(1)(A).[2] The burden of proof rests on the defendant. *See United States v. Jones*, 836 F.3d 896, 899 (8th Cir. 2016); *United States v. Green*, 764 F.3d 1352, 1356 (11th Cir. 2014).

The § 3553(a) factors include:

> (1) The nature and circumstances of the offense and the history and characteristic of the defendant;

---

[2] The parties dedicate most of their briefs to arguing whether the Court can determine what "other reasons" justify a sentence modification. In brief, Congress directed the U.S. Sentencing Commission to determine what constitutes an "extraordinary and compelling reason" warranting compassionate release under 18 U.S.C. § 3582(c)(1)(A). *See* 28 U.S.C. § 944(t). It did so in § 1B1.13 of the U.S. Sentencing Guidelines Manual: (1) medical condition of the defendant; (2) age of the defendant; (3) family circumstances; and (4) *other reasons*. The Commission then left it to the Bureau of Prisons to determine what "other reasons" justify a sentence modification; but given the Commission's failure to update § 1B1.13 after the compassionate-release provision was amended, Westley argues that the *Court* is now empowered to determine what "other reasons" warrant compassionate release—i.e., the threat posed by COVID-19 to medically compromised inmates. Naturally, the Government disagrees. With that in mind, the Court need not decide that issue because any sentence modification must still accord with the factors in 18 U.S.C. § 3553(a). And as discussed later in this Memorandum Opinion and Order, the § 3553(a) factors weigh against a sentence modification here.

 (2) The need for the sentence imposed—

   a. To reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

   b. To afford adequate deterrence to criminal conduct;

   c. To protect the public from further crimes of the defendant; and

   d. To provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

 (3) The kinds of sentences available;

 (4) The kinds of sentence and the sentencing range established for—

   a. The applicable category of offense committed by the applicable category of defendant as set forth in the guidelines . . . or;

   b. In the case of a violation of probation or supervised release, the applicable guidelines or policy statements issued by the Sentencing Commission . . . ;

 (5) Any pertinent policy statement—

   a. Issued by the Sentencing Commission . . . ; and

   b. That . . . is in effect on the date the defendant is sentenced[;]

 (6) The need to avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct; and

 (7) The need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

"The judge need not address every factor 'in checklist fashion, explicitly articulating its conclusions regarding each one.' " *See United States v. Kappes*, 782 F.3d 828, 845 (7th Cir. 2015) (quoting *United States v. Shannon*, 518 F.3d 494, 496 (7th Cir. 2008)). It is enough to "simply give an adequate statement of reasons, consistent with § 3553(a), for thinking" that a sentence modification is inappropriate. *See Shannon*, 518 F.3d at 496.

### B. The § 3553(a) Factors Weigh Against Compassionate Release

First, the Court acknowledges the particular danger posed by the COVID-19 pandemic to prisoners, who live in close quarters and often cannot practice social distancing. "But the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release . . . ." *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020). The Bureau of Prisons ("BOP") is in the best position to know which inmates are most susceptible to infection and whether they still pose a public-safety risk. And since March 2020, BOP has released over 7,000 inmates that it has identified as "suitable for home confinement." *Coronavirus*, BOP (last visited Nov. 6, 2020), https://www.bop.gov/coronavirus/. Although not bound by any BOP determination, the Court gives BOP some deference in this area "considering [its] statutory role, and its extensive professional efforts to curtail the virus's spread." *Raia*, 954 F.3d at 597.

With that in mind, the § 3553(a) factors weigh against a sentence modification here. Westley was convicted just two years ago of a reprehensible offense, the seriousness of which "is not in question." (Def.'s Supp. Brief at 14). Although he argues that his "continued incarceration is not necessary to promote respect for the law, provide deterrence or protect the public," he provides no support for that assertion aside from managing not to commit further crimes in the short time of his incarceration. (*Id.*). Indeed, the fact that Westley has capitalized on the educational programing at FCI Forrest City Low, (*id.* at 13), is another reason to deny his request for early release, as incarceration is likely the most effective way for him to obtain "needed educational or vocational training, medical care, or other correctional treatment," § 3553(a)(2)(d). The public also has a countervailing interest in ensuring that Westley (and others) are deterred from, and receive just punishment for, promoting the sexual exploitation of children. Moreover,

Westley's attempt to characterize his 60-month sentence as "a punishment of severe illness or even death" ignores that fact that COVID-19 immunity may exist for up to seven months post-infection. *See* Stacy Kuebelbeck Paulsen, *Studies Show Long-Term COVID-19 Immune Response*, Ctr. for Infectious Disease Rsch. & Pol'y (Oct. 26, 2020).[3] Regardless, there are no conditions of early release that would guarantee the safety of the community, especially since home confinement and location monitoring would do little protect the public from someone that commits crime over the Internet.

### III.     CONCLUSION

The Court **DENIES** Defendant Vincent L. Westley's Motion for Compassionate Release.

**IT IS SO ORDERED.**

**Dated: Friday, November 6, 2020**

                                                     **S/J. Phil Gilbert**
                                                     **J. PHIL GILBERT**
                                                     **UNITED STATES DISTRICT JUDGE**

---

[3] *Available at* https://www.cidrap.umn.edu/news-perspective/2020/10/studies-show-long-term-covid-19-immune-response.